IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OFARIZONA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ERNESTO SANTIAGO-GARCIA,<br><br>Defendant. | NO.  CR 09-00231-TUC-RCC(BPV)<br><br>**REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO SUPPRESS EVIDENCE AND STATEMENTS** |

On January 24, 2009, Defendant Ernesto Santiago-Garcia, a Mexican national visiting the United States on a B1-B2 visa, was arrested as a prohibited possessor of ammunition in violation of 18 U.S.C. §§ 922(g)(5)(B) and 924(a)(2). The Defendant was indicted on February 18, 2009 [Doc. 6]. On April 21, 2009, Defendant filed a Motion to Suppress Evidence and Statements [Doc. 13]. The Government filed its Response on May 5, 2009 [Doc. 16].

The matter came on for Evidentiary Hearing before the Court on May 26, June 1, and June 15, 2009. The Government called as witnesses: Bureau of Alcohol, Tobacco, and Firearms (ATF) Special Agent in Charge Sigberto Celaya; ATF Agent Paul Brostko; and ATF Special Agent Rustin Wayas. The defense called as witnesses Adolfo Ruiz[1], Defendant Ernesto Santiago-Garcia, and Ernesto Santiago-Celaya.

The Court, having considered the briefing, arguments, and evidence presented, recommends that the District Judge, after his independent review and consideration, enter an

---

[1] The witness, Adolfo Ruiz, probably has the nickname of Fito and not Pito.

order **GRANTING** Defendant's Motion to Suppress Evidence and Statements [Doc. 13].

**<u>FACTS</u>**

On January 24 and 25, 2009, a gun show was held at the Tucson Convention Center (TCC). ATF and the Tucson Police Department were working together in a joint operation in an attempt to identify persons illegally purchasing, possessing, or transferring firearms and ammunition.

ATF SAC Celaya, working in an undercover capacity, was surveilling the TCC arena from an observation station. At some point, Agent Celaya focused his attention on three Hispanic males, who were in the company of a male teenager and a young boy. One of the men was looking over the various booths. Eventually, Agent Celaya moved away from the observation station to stand next to the Defendant, who was gesturing towards the ammunition boxes. The salesman responded by stating the price for each type of ammunition. The Defendant was speaking Spanish. The salesman spoke English. Eventually, the Defendant purchased the ammunition at issue herein. The Defendant and his son approached another member of their group and the ammunition was placed in a carrying bag. At that point, the men left the TCC arena.

Agent Celaya decided to follow the group and called for his colleagues to assist him in the parking lot. At that time, Agent Celaya was suspicious because:

1) The Defendant had a hefty wad of cash.
2) The Defendant had given ammunition to another member of the group, *i.e.* a possible straw purchase.
3) The ammunition was quickly placed in a bag.
4) The Defendant left the area immediately after purchasing the ammunition.

As Agents Celaya and Paul Brostko followed the group, they observed them get into a minivan with an Arizona license plate. Agent Celaya went to the driver's side door of the minivan, and Agent Brostko went to the passenger's side. Both agents displayed their badges as they knocked on the windows of the van. At that time, the Defendant had already started the vehicle and the engine was running. Agent Celaya told the Defendant in English that he

wanted to speak with him. The Defendant asked if the agent could speak Spanish.

Agent Celaya testified that he did not recall whether he asked the Defendant to get out of the van. He believes the Defendant got out when Celaya told him that he wanted to talk to him. Agent Celaya originally testified on May 26, 2009, that he believed the Defendant shut off the van. He later testified that he had no recollection of whether the van was turned off. He did recall grabbing the keys after he determined that the Defendant was a prohibited possessor of ammunition. On June 1, 2009, ATF Special Agent Rustin Wayas testified that, as he approached the scene prior to any investigation, Agent Celaya turned off the vehicle and took the keys. Agent Brostko testified on June 1, 2009, that he observed the same thing. When Agent Celaya testified on June 15, 2009, he had a specific recollection of turning the vehicle off for safety reasons.

As each person exited the vehicle, they were directed to specific areas around the van. The Defendant was removed from the van to an area approximately 15 feet away. Agent Celaya asked the Defendant for identification. The Defendant produced a B1B2 visa (border crossing privileges). From this information, Agent Celaya knew the Defendant was not a lawful permanent resident and therefore was a prohibited possessor of ammunition. Agent Celaya talked with the Defendant about his purchase of the ammunition, its current location, and Defendant's further plans for the ammunition. The Defendant was not read his Miranda rights until after the conclusion of his interrogation by Agent Wayas or, as the Defendant said when asked about Miranda: "I don't know who Miranda is."

As a result of the seizure, the agents determined that:

1) One Hispanic male was illegally in the United States.

2) The Defendant possessed $2,600.00 in cash.

3) The Defendant illegally purchased and possessed the ammunition.

## **DISCUSSION**

In U.S. v. Cortez, this Court (albeit as a lawyer) was specifically told:

> "An investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity."

449 U.S. 411, 417 (1981)(citations omitted). In applying this standard, Courts are instructed

to look at the totality of the circumstances, giving due weight to the law enforcement officer so long as the articulation of the circumstances at hand are more than a hunch. <u>U.S. v. Montero-Camargo</u>, 208 F3d 1122, 1131 (9th Cir. 2000). In determining whether law enforcement has reasonable suspicion for an investigatory stop, the Courts look at the "totality of the circumstances" of each case to see whether the detaining officer has a "particularized and objective basis" for suspecting legal wrongdoing. <u>U.S. v. Arvizu</u>, 534 U.S. 266, 273 (2002).

The Government contends that Tucson, Arizona, because of its proximity to Mexico, has many Hispanic people, some who are here legally and some who are here illegally. The Government also seems to contend that Hispanics who speak only Spanish can be suspicious to law enforcement. However, one must acknowledge that a lawful permanent resident is not required to speak English and that only prospective candidates for citizenship must speak English.

Taken as a whole, the evidence demonstrates that a Spanish-speaking family group of Hispanics in a vehicle registered in Arizona purchased a small amount of ammunition. The calibers of said ammunition, ranging from .17 caliber to 30/06, did not suggest illegal drug activity. The ammunition in the quantities purchased are not suspicious. The purchase screams domestic use, especially at a time when firearms dealers are having a difficult time keeping up with the demand for ammunition.

This Court is unable to find any support for Agent Celaya's seizure of Defendant, especially when testimony suggests that 20% of the gun show crowd is of Hispanic ethnicity or a race other than white. Further, even considering the totality of the circumstances, there was no "particularized and objective basis" for suspecting legal wrongdoing, unless being Hispanic and speaking Spanish while making a purchase amounts to the same. Agent Celaya was concerned about a straw purchase of ammunition. This cannot be considered too seriously because no records are kept for the purchase of ammunition. Therefore, any person could buy ammunition for another person without the need of a straw person. A straw purchase is a person with a clean record buying a firearm for a person without a clean record.

1 Under the current scenario, if this Magistrate attended a gun show to purchase ammunition,
2 he better take Judge Fields with him, and not this Magistrate's brothers.

3 Further, assuming Agent Celaya had a founded suspicion to briefly detain the minivan
4 occupants, he did not have enough articulable information to conduct such an enhanced
5 detention amounting to an arrest. Agents Celaya and Brostko displayed their badges and
6 Agent Celaya told the driver that he wanted to talk to him. After the Defendant exited the
7 vehicle, Agent Celaya turned off the minivan and kept the keys and the Defendant's
8 identification. If the Defendant left without his identification, he would not be able to prove
9 that he was legally in the United States. As this occurred, Agent Brostko directed the
10 passengers to various locations around the minivan, the purpose of which was to obtain
11 separate unrehearsed responses from the detainees. Obviously, this was something more than
12 a brief investigatory seizure. This conduct objectively demonstrated that, not only was the
13 Defendant not free to leave, but Agent Celaya was the only person that could make that
14 decision. At the time that Agent Celaya detained and separated the Defendant from his
15 vehicle and companions, he did not have any objective evidence to justify the arrest of the
16 Defendant.

17 The Court has reviewed Counsels' post-hearing memoranda and acknowledges the
18 extensive work performed by Counsel, both pre- and post-hearing. The Court appreciates
19 the vigorous advocacy of Counsel.

20 Under either of the Government's statement of facts, Agent Celaya had no founded
21 suspicion for detaining the Defendant. The Court finds suspect the Government's
22 proposition that the ammunition being quickly placed in a bag was suspicious. The Court is
23 unaware that there are legitimate or illegal ways of placing items in a bag, especially when
24 there is no evidence of furtive conduct, i.e. looking around as the ammunition is placed in
25 the bag. The Court also expresses some disbelief that a person who purchases something at
26 a venue or goes in for a specific purpose is required to remain at that venue for an
27 undetermined "legitimate" period of time. This rule does not seem to apply at gas stations,
28 grocery stores, firearms stores, or public restrooms. In this Court's experience, a person goes

somewhere to purchase an item, purchases it, and then leaves.

The Government has cited a number of cases that allow very restrictive measures pursuant to stops based on founded suspicions. These cases do not apply to seizures on something less than founded suspicion. Agent Celaya had a hunch, and nothing more. A hunch does not justify the activity that took place in this instance.

This situation could have gone much differently if Agent Celaya had a little more respect for the Fourth Amendment and had used his head more thoughtfully. For example, Agent Celaya could have displayed his badge; the Defendant could have rolled down his window; Agent Celaya could have asked the Defendant if he lived in Mexico; the Defendant might have said yes. Probable cause would have been established and the occupants could then be removed from the minivan, the engine turned off, and the keys taken. Instead, Agent Celaya effectively placed Defendant under arrest without probable cause, failed to advise him of his rights, and turned him over for questioning to Agent Wayas without telling him that the Defendant had not been Mirandized. The Defendant said it best when he testified: "I don't know who Miranda is." According to the facts presented to this Court, there is no reason he should, but he should have been made aware of Miranda.

**CONCLUSION**

It is the recommendation of this Court that the District Judge, after his independent review and consideration, enter an Order **GRANTING** Defendant's Motion to Suppress Evidence and Statements [Doc. 13].

Pursuant to 28 U.S.C. §636(b)(1)(B), the parties have ten (10) days from the date of this Report and Recommendation to file written objections to these findings and recommendations with the District Court. Any objections filed should be filed as **CR 09-00231-TUC-RCC.**

DATED this 1st day of July, 2009.

_____
Bernardo P. Velasco
United States Magistrate Judge